**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTINE IANNELLI, | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SK FOOD CONCEPTS, LLC, d/b/a | ) | |
| TAPVILLE SOCIAL – WEXFORD, | ) | |
| and KRISHNASAMY KARUPPIAH, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### I.    PRELIMINARY STATEMENT

By this action, Plaintiff, Christine Iannelli, seeks compensatory damages, punitive damages, and attorneys' fees and costs as a result of being subjected to sexual harassment by the owner of Defendant, SK Food Concepts, LLC, d/b/a Tapville Social – Wexford ("Tapville Social"), in violation of Title VII of the Civil Rights Act of 1964, as amended. Plaintiff also brings related state law counts for assault and battery against Defendant Krish Karuppiah, the owner of Tapville Social.

### II.    JURISDICTION

1. This court has jurisdiction of this matter by virtue of 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States.

2. This court also has jurisdiction of this matter under 28 U.S.C. § 1367, in that this is a civil action of which this federal district court has original jurisdiction, and two of Plaintiff's claims are brought under Pennsylvania state law, which are related to the federal claim in this action in that

1

they form part of the same case or controversy under Article III of the Constitution of the United States.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship, and the acts constituting a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

4. On June 15, 2023, Plaintiff filed a Charge of Discrimination with the EEOC against Defendant Tapville Social alleging that she was subjected to a severe and pervasive sexually hostile work environment and Tapville Social did nothing to stop the sexual harassment. Plaintiff's Charge was dual filed with the PHRC. On January 29, 2024, the EEOC issued to Plaintiff a Notice of Right to Sue.[1]

### III.   PARTIES

5. Plaintiff, Christine Iannelli ("Iannelli"), is an adult female who resides at 903 Crawford Road, Pittsburgh, PA 15237. At the time of the incident complained of in this lawsuit and presently, she was and is a citizen of the Commonwealth of Pennsylvania and the United States of America.

6. Defendant SK Food Concepts, LLC, d/b/a Tapville Social - Wexford, is a Pennsylvania corporation. Plaintiff worked out of its Wexford, Pennsylvania restaurant, located at 11978 Perry Highway, Unit 401, Wexford, PA 15090, which at all relevant times contained 15 or more employees.

---

[1] Once the administrative requirements have been exhausted with the PHRC, Plaintiff intends to amend this Complaint to include an additional count against Defendant Tapville Social for hostile environment sexual harassment under the PHRA.

7.       Defendant Krishnasamy "Krish" Karuppiah is an adult male who resides at 225 Molly Drive, McMurray, Pennsylvania 15317.

## IV.      STATEMENT OF CLAIM

8.       On June 6, 2022, Iannelli contacted Tapville Social through its corporate Facebook page to inquire about job openings for the yet to open new Tapville Social restaurant in Wexford. Plaintiff spoke with a man who had an accent and told him she had 35 years of experience as a bartender and server in the restaurant business. He asked Plaintiff where she lived and then told her that she had the job. He then asked Plaintiff to come into the restaurant immediately to finish some paperwork.

9.       Shortly thereafter, on that same day, June 6, 2022, Iannelli went to the restaurant. While there, she was interviewed via Zoom by someone from Tapville Social's corporate office.

10.       Defendant hired her while she was still in the restaurant following her virtual interview. Iannelli was hired to be a bartender and was the first employee hired by Defendant for the Wexford location. She was told that the restaurant would open on July 4, 2022.

11.       On or about July 7, 2022, Iannelli spoke by telephone with Charles (last name unknown), the general manager of the restaurant. Charles asked her to come to the restaurant at a time convenient for her to complete some employment-related paperwork. Charles indicated that he would be present whenever she came to the restaurant so he could give her the documents.

12.       About 20 minutes later that same day, on or about July 7, 2022, Plaintiff went to the Wexford location. Only one man was present. Iannelli later learned this man was the Tapville Social franchise owner, Krish Karuppiah ("Karuppiah"), whose voice she recognized from her initial phone conversation described above. Karuppiah told her that Charles was not there and that he had left for the day. He gave Plaintiff the paperwork to complete and then asked her to sit

down with him. Karuppiah spoke to her for about 20 minutes about his personal life and then inquired about Plaintiff's personal life. He then gave her a tour of the restaurant.

13. Once Karuppiah finished the tour, Iannelli thanked him and began to leave. As she turned to wave goodbye, Karuppiah got very close to Plaintiff, hugged her, and did not let her go for several minutes. Plaintiff never gave Karuppiah consent to invade her personal space nor did she give him permission to hug her. The hug lasted around 5 minutes, despite Plaintiff's protesting.

14. Iannelli was very shocked and uncomfortable and did not know how to respond. While still stuck in Karuppiah's hold, Iannelli respectfully told Karuppiah that his behavior was inappropriate. Instead of letting go of her, Karuppiah began massaging Iannelli's back and whispered in her ear, "You feel so good, you're such a strong and beautiful woman, I'm so attracted to you, you feel so good, I can't let you go. I won't let you go." Iannelli responded by telling Karuppiah she was very uncomfortable and wanted him to take a step back. Karuppiah continued to hug Iannelli anyway. She continued to ask for space and stressed that this was inappropriate. Iannelli also mentioned that both she and Karuppiah were married, as they had just discussed. After about 5 minutes, Iannelli firmly pushed Karuppiah away and put space between herself and him. She then took a step back, shook her head in disapproval and left without saying anything.

15. Iannelli felt very violated and angry that her new boss treated her in the manner described in the preceding two paragraphs.

16. In the two weeks following Karuppiah's nonconsensual, distressing contact with Iannelli, Karuppiah called Iannelli approximately 5-6 times. When he spoke to her, Karuppiah

asked her to meet him for coffee numerous times. He also asked for directions to Iannelli's home.

17.    On one occasion, Karuppiah said he knew Iannelli's husband was in Florida and he wanted to come over. Iannelli repeatedly turned down his advances and made-up excuses for why she could not meet Karuppiah.

18.    On a different occasion, Iannelli told Karuppiah he could come over but that her son would also be present. Iannelli mentioned her son because she thought Karuppiah was trying to get her alone. As Plaintiff expected, Karuppiah declined once he learned her son would be home.

19.    Karuppiah continued to call and text Plaintiff on numerous occasions beginning on or about July 7, 2022. Each of these attempts included some form of romantic pursuit from Karuppiah, which Plaintiff consistently rejected.

20.    Plaintiff's official start date at Tapville Social was August 12, 2022. She began training before the restaurant opened to the public on August 17, 2022. Plaintiff reported to work on her first day with great hesitancy due to the events with Karuppiah.

21.    Karuppiah was present during almost every shift that Iannelli worked during her first week at Tapville Social. When present, he walked around the restaurant and frequently stared at Iannelli. Karuppiah often engaged in conversation with Iannelli in order to get close to her. These conversations usually coincided with Karuppiah touching Iannelli's elbow or putting his hand on her hips. Much like the previous contact, this was without Iannelli's consent and made her uncomfortable.

22.    Iannelli made great efforts to avoid being alone with Karuppiah.

23. On August 19, 2022, at the end of her first week at Tapville Social, Karuppiah again touched Iannelli. On this occasion, he touched her elbow and her shoulder. Iannelli told Karuppiah that he did not need to be that close to her and that she needed space. Karuppiah ignored Iannelli. Later that same day, Karuppiah touched her hip and butt. After this, Iannelli asked Karuppiah not to come within three feet of her. Shortly after this contact, on the same day, Iannelli became fed up with Karuppiah's conduct and left the restaurant.

24. On or about the morning of August 26, 2022, Iannelli met with the General Manager of the Wexford restaurant, Charles. During this meeting, she told him everything that Karuppiah had done and said to her. Specifically, Iannelli stated that she felt Karuppiah had been sexually harassing her. She showed Charles her phone, pointing out all the phone calls and text messages from Karuppiah. Iannelli told Charles that she never wanted to go back there.

25. Charles appeared supportive and said that he would confront Karuppiah about his actions in an effort to make it stop. He said he would get back to Iannelli and asked her to return to work, stating, "we'll work this out."

26. After her conversation with Charles, Iannelli considered returning to work at Tapville Social. However, Iannelli only wanted to return if there were measures put in place to prevent any more unwanted sexual advances from Karuppiah.

27. Despite his promises to Plaintiff, Charles never reached back out to her regarding her complaints about Karuppiah's highly offensive behavior, nor did anyone else at Tapville Social.

28. Because Iannelli feared that Karuppiah would continue to touch her without her consent and constantly hit on her if she returned, she felt there was no other option but to quit.

29.    After Iannelli's employment with Tapville Social ended, she sent a text message to Karuppiah to receive her final paycheck. She felt as though she had no choice but to be extremely polite and apologetic, so that Karuppiah would still pay her. Because she feared not getting paid, Iannelli felt she needed to raise an alternative reason for why she left, instead of telling Karuppiah it was his own behavior. So, she chose to reference her food running duties instead. When sending the text, Iannelli only focused on doing whatever she needed to get the paycheck. At that point, she wanted to put this situation behind her as easily as possible.

30.    During the events with Karuppiah, Plaintiff suffered extreme emotional distress. The mistreatment also impacted her relationship with her husband.

31.    Iannelli felt trapped in her work situation. She had waited months to start this job, so she felt financial pressure to stay. Trying to balance this pressure with the emotional toll of Karuppiah's actions became very difficult. While working at Tapville Social, Iannelli felt discouraged and fearful. She felt that there would be no one to help her, since Karuppiah was every employee's boss. This fear was justified when Iannelli complained to the general manager, and he did nothing to help her.

32.    This distress also did not subside after she was forced to quit. Iannelli felt incredibly invalidated. She became afraid to work anywhere else after what Karuppiah did to her. Iannelli was continuously scared to put herself in any situation in which a man would be in a position of power over her. Being forced to quit left Plaintiff with both guilt and stress regarding her financial situation.

## V.     CLAIMS FOR RELIEF

## <u>COUNT I – VIOLATION OF TITLE VII – HOSTILE WORK ENVIRONMENT</u>

### Plaintiff v. Defendant SK Food Concepts, LLC d/b/a Tapville Social - Wexford

33.     Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

34.     Defendant Tapville Social has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended.

35.     The sexually harassing actions of Karrupiah against Plaintiff are part of a pattern of conduct that Defendant Tapville Social never corrected despite the opportunity to do so.

36.     As a result of Defendants' actions, described in particularity above, Plaintiff has been discriminated against because of her gender, female, and has been subjected to severe and/or pervasive hostile environment sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended.

37.     Plaintiff has been directly harmed because of these violations as is fully set forth above.

## <u>COUNT II – CIVIL ASSAULT</u>

### Plaintiff v. Defendant Krish Karuppiah

38.     Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

39.     Defendant Karuppiah committed acts with the intention of causing reasonable apprehension of an immediate harmful or offensive contact.

40.     Defendant Karuppiah's actions succeeded in causing Iannelli imminent apprehension of harmful or offensive contact.

41.     Plaintiff has been directly harmed because of these violations as is fully set forth above.

## COUNT III – BATTERY

### Plaintiff v. Defendant Krish Karuppiah

42.     Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

43.     As set forth above, Defendant Karuppiah made harmful and/or offensive contact with Plaintiff Iannelli. This contact was a result of Karuppiah's intentional act to cause harmful or offensive contact with Iannelli.

44.     Iannelli never gave consent to any contact from Karuppiah.

45.     Plaintiff has been directly harmed because of these violations as is fully set forth above.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a)     Assume jurisdiction herein;

(b)     Declare Defendant's conduct to be unlawful and an intentional violation of Plaintiff's rights;

(c)     Award Plaintiff compensatory damages under Title VII for pain and suffering and/or emotional distress;

(d)     Award Plaintiff damages associated with the increased tax burden of any award;

9

(d)     Award Plaintiff punitive damages under Title VII;

(e)     Award Plaintiff compensatory damages under Pennsylvania tort law;

(f)     Award Plaintiff punitive damages under Pennsylvania tort law;

(e)     Award Plaintiff pre-judgment and post-judgment interest under all counts;

(f)     Award Plaintiff costs and attorneys' fees under all counts; and

(g)     Grant such other relief as the Court deems just and appropriate.


                                    Respectfully Submitted,

**JURY TRIAL DEMANDED**              s/ David B. Spear

                                    David B. Spear
                                    PA Id. No. 62133

                                    Minto Law Group, LLC
                                    Stone Quarry Crossing
                                    811 Camp Horne Road, Suite 320
                                    Pittsburgh, PA 15237
                                    412-201-5525
                                    dspear@mintolaw.com

                                    Counsel for Plaintiff